Case No. 25-17-3 Muhammad Hilmi Nassif & Partners, owner of the great-named Crest Worldwide Corp, Avalanche, v. Republic of Iraq, and Ministry of Industry and Minerals of the Republic of Iraq Ms. Artiga Gomez for the Avalanche, Mr. Zuberi for the Avalanche Good morning. Good morning. May it please the Court. The lower court erred with respect to Iraq's explicit waiver of sovereign immunity because it broadened the plaintiff's burden of production and it shifted the burden of persuasion to the plaintiff. Now, the court acknowledged that Nassif's proof consisted of declarations that paraphrased discussions between high-ranking Iraqi government officials and Nassif & Partners. But even with that acknowledgment that the declarations did not contain quotes from what these officials said, the court still attempted to analyze the words that were used by the Iraqi officials according to the declarations. And that led to the court failing to do what it was supposed to do under the FSIA, which is to determine the sovereign's intent. Now, if we look at the content of the declarations, these high-ranking government officials in these discussions with Nassif & Partners were assuring Nassif & Partners that it needed to sue in order to collect and that when it sued, Iraq was not going to defend and it was not going to object. So perhaps these statements could be suggestive in one sense of, you know, some type of waiver of sovereign immunity, perhaps, but it seems there are other plausible interpretations as well. And so the standard is really difficult because the Supreme Court and this court has repeatedly said that any ambiguity has to be construed in favor of sovereign immunity. So how do you overcome that high hurdle? So it's not enough that the statements could be read as a waiver. If there's any other plausible interpretation, then this court's required to rule in favor of sovereign immunity. Your Honor, I would posit that there is no other reasonable interpretation given the context in which the statements were made. These were not statements that were made at a time when the parties were negotiating the letter agreement. These statements were made when that letter agreement has already been breached and the discussion is about what are we going to do in order for Iraq to pay? So the discussion is what are we doing considering that the letter agreement has already been breached? So all of the discussions that are taking place are contemplating a lawsuit because Iraq is saying, to collect, you're going to have to go get a judgment and when you bring us a judgment, we'll pay it. But don't worry because we're not going to raise any objections and we're not going to defend. So maybe that means they're not going to raise any objections on the merits. There's no claim in the declaration that they said that they waive their sovereign immunity or that they won't raise immunity. The immunity and the merits are arguably distinguishable. There's no requirement in the law that the word sovereign immunity be used in order to explicitly waive it. That's true. And in this case, the same, we're not going to raise any defense. I mean, what greater defense, what more obvious defense does a sovereign have other than sovereign immunity? So a reference to we are not going to defend is a reference to we are waiving our sovereign immunity. And that really is the only reasonable interpretation that can be given to these statements. In the context of a letter agreement that's already been breached and the parties are discussing, how are we going to collect on that breached letter? It's going to be through a lawsuit because that is an encouragement to sue. Iraq says to collect, you go sue. That's an encouragement to sue. How do you encourage a party to go sue? Couple it with assurances that you're not going to defend, you're not going to object, and then turn around and say, no, but we are actually asserting our sovereign immunity. It's inconsistent. They're irreconcilable. And we know what the court then did is it focused because it was trying to read the exact words that were in the declaration, even knowing that those were not the exact words that were uttered by the Iraqi officials. It then said, well, it found fault with our proof. It said, well, the proof is just too ambiguous. It lends itself to ambiguity and says we can't precisely determine whether there was an intent to waive. And this precision requirement that the court discusses is not found anywhere in the law. It was found in Iraqi's brief. If you look at the district court's decision, the citation is to Iraq's brief when it discusses precision. And we know that the law doesn't require. It's just another way of saying an absence of ambiguity. Yes, Your Honor, but. So we have to have an absence of ambiguity. You agree with that. Yes, I do, Your Honor. And you've quoted some of the language, but none of the language is quotations from government officials. It's paraphrases. It's someone's here's what I remember them saying. Yes. Doesn't isn't that itself a source of ambiguity? Because by the way, I assume this has all been translated as well. Yes. Right. So it's a translation of someone else's here's a statement. Isn't that itself just a source of ambiguity? Because we don't have their words specifically. Your Honor, there is no specific wording requirement in the FSA. That is a king that is tantamount to a writing requirement, which the FSA doesn't have. No, I'm not. I don't think that's fair to confuse that with a writing requirement. What I'm saying is we don't have the Iraqi officials' words full stop. Yes, Your Honor. We don't have their words. Isn't the absence of having their words, their own words, make it ambiguity? All I've got is someone's recollection of those words. And Your Honor, what I'm explaining is that in this context, right, where the discussion is solely centered on a breach of the letter agreement and a lawsuit, the court can look at the message that is being conveyed by these officials without knowing the exact words. The message without the words is an unambiguous waiver? When the message is, sue, we will not defend, we're not going to object. Yes, Your Honor. And we know that the court, the law doesn't require this precision. It's someone else's statement that they told me they won't defend, they won't object. And since what they meant by that, as Judge Rao was pointing out, is really important. Yes, Your Honor. And so then exactly which word they remembered someone saying matters. It does matter, Your Honor. But again, in this context where the facts are uncontroverted, we're not dealing with a case where Iraq has come with its own evidence and said we didn't utter those words. So in this scenario, what the law requires, according to Owens v. Sudan, which is a D.C. District Court case that relies on Simpson, a D.C. Circuit case, the law just requires that there be sufficient proof and even a meager showing by a plaintiff when the defendant hasn't brought forth its own evidence is sufficient. This is a motion to dismiss stage. Now at a later stage, you know, Iraq will have the opportunity to introduce whatever evidence it wants and can raise the issue again. But at this initial stage where-  This is jurisdictional. Yes, Your Honor. But again- It's jurisdictional and so courts can actually make some, gather some factual evidence and make some factual findings at this stage. Yes. And the law allows Iraq at this stage, which is a different, it's very awkward, very unusual at a motion to dismiss stage for a defendant to have the ability to produce its own evidence. And yet Iraq didn't do that. And so the law says that even a meager showing in Simpson, the circuit, this circuit court warned that a defendant who doesn't bring its own evidence risks the denial of a motion to dismiss because even a meager showing by the plaintiff will suffice. And here, Your Honor, I would argue that this is- A meager showing, but then you have to weigh that against the fact that you have to have clear and unambiguous evidence of a waiver of sovereign immunity. So how do you- How do you reconcile those? And, Your Honor, you reconcile them because, again, the message being conveyed generally is just completely inconsistent with an assertion of sovereign immunity. I think it's not enough in this context. So even if, I mean, say we think that your interpretation is 90% likely, the fact that it's even plausible that there's another interpretation is sufficient under the case law to defeat, you know, to, you know, require us to recognize Iraq's sovereign immunity. Even if we talk about the plausibility of a different interpretation, as the district court judge did, the district judge said, well, they could have been speaking about the letter agreement, not the lawsuit. But again, they weren't speaking about a venue limitation in a letter agreement devoid of the lawsuit. You just can't separate those two. Because in this context, that letter agreement had already been breached. So we are just talking about what is your remedy to collect on this breached letter agreement? And Iraq says to, in whatever words it used explicitly, the message was, go sue. And we're not going to defend. Go sue, but that doesn't mean they won't assert a defense of sovereign immunity. Go sue, maybe it's just a delaying tactic. I mean, there's nothing in the declarations that it's inconsistent with. Maybe you want to say it's bad faith or whatever. There's like, yeah, go ahead and sue, but, you know, whatever. We're going to assert sovereign immunity. I mean, that is the nature of sovereign immunity. But, Your Honor, taking the declarations in the light, you know, as true, because they're uncontroverted, it's a motion to dismiss for the plaintiffs. Taking those declarations is true. They also said, Iraq also said, that they were not going to defend on that lawsuit. And they said, once you get the judgment, we'll pay on it. So, under those, Your Honor, I would submit to this court that given in this unique scenario, there is a clear and unambiguous waiver. And especially considering that we just have to have meager evidence. I think we have more than that. I would like now to turn to the commercial activities exception. Can I just ask one more question about this one?  There is an argument raised, and you certainly have had some answers to it, that these officials didn't have the authority to waive sovereign immunity. For something to be clear and ambiguous, do we have to know also that it was made by someone who has authority? I could give you a clear and ambiguous statement right now. I, on behalf of the Republic of Iraq, waived their sovereign immunity from a lawsuit for you. That's clear and unambiguous wording. But I don't have the authority. Is part of our clear and unambiguous inquiry, whether we also have to find that it's a statement made by someone with authority? Yes, Your Honor. But the magistrate judge analyzed that issue, determined that the evidence that we put forward on those Iraqi officials' authority, the experts that we produced, were sufficient. The district court never commented on that. Never commented on that evidence. And so I would submit that that is a question that would still require a remand for the district court to consider. So we couldn't decide today whether there was a clear and unambiguous waiver here. The most we could do is decide, if we decide in your favor, is that these statements, if made with authority, would be a clear and unambiguous waiver of sovereign immunity. Yes, Your Honor. You would be able to decide that, that if those statements made with authority. But we still have to remand. It still wouldn't be a waiver. You'd have to go back and have the district court resolve the authority issue. Your Honor, that issue was just never, it was waived. Sorry. That issue just was not addressed by the court. So, yes. Now, in terms of the commercial activities exception, the lower court erred in its analysis because it strayed from the text of the FSIA, and it relied on an erroneous interpretation of Supreme Court decisions in Nelson and in Sachs. The FSIA allows for three different ways of finding a commercial activity exception. NASA and Partners is proceeding under the third prong. In that prong, it says that a foreign state shall not be immune from the jurisdiction of courts of the United States, or of the states in any case in which the action is based upon, and act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere. And that act causes a direct effect in the United States. Now, even prior to Nelson and Sachs, the Second Circuit has been deciding judgment enforcement actions. This issue of whether commercial exception applies in judgment enforcement actions, simply by relying on the text of the FSIA, and has been looking at the facts of the underlying lawsuit that led to the judgment enforcement action. That's not enforcement. This is a recognition action. Or judgment recognition action. Those are different things. Understood, Your Honor. But the Second Circuit has still just been looking at the facts underlying the merits of the case that led to the judgment. So, you have to have one waiver of sovereign immunity for the, so we call it the merits litigation. A separate one for enforcement actions. Do you know what the rule is for recognition actions? Does the merits action one cover that recognition proceeding? Or do you need a separate waiver of sovereign immunity for the recognition proceeding? Your Honor, I have not read any case law. I don't know that there is any cases that say a recognition action is treated any different from an enforcement action. I would submit to the court. So, you say you need to meet the enforcement action standard for this case? I thought you were relying on the, what I call the merit stage, the explicit waiver provision of the FSIA, which is the merit stage waiver. There's just a different section of the FSIA governing enforcement actions. Your Honor, I'm sorry, maybe I'm misunderstanding the question. We're relying on two separate exceptions. We're saying Iraq explicitly waived. And then we're also saying there was also a commercial activity exception because the behavior, the conduct of Iraq was a commercial activity, the relevant conduct to this recognition action. But the FSIA has section 1610 governs immunity from enforcement actions. 1610 is a different test than the explicit waiver language that you're relying on. Or? I'm relying on 1605A2. Okay, that doesn't cover enforcement actions. Recognition actions. Sorry. Okay. Sorry. Yes. Well, that's my question to you is does that govern recognition? Do we group recognition? I thought you said we, I thought your answer to me was we put that in the camp of enforcement actions. Because I said, is it part of the merits or is it part of the enforcement? I thought you said it's enforcement. Oh, I'm sorry, Your Honor. Maybe I misunderstood my question there. What we're saying is this recognition action, the commercial activity exception is governed under A2. So recognition action under A2 could still, we could still have an explicit waiver based on a commercial activity. Okay. Are you aware of any cases that talk about which of the two waiver routes covers recognition actions? Well, Your Honor, the FSIA just says that if there is an action where there is a commercial activity, based on a commercial activity in the United States, then we, the sovereign is deemed to have waived his immunity. So in a recognition action, if the action is based upon commercial activity, then there would be a finding of, provided that there's a direct effect in the United States, there would be a finding of explicit waiver. And with the issue with the recognition action is that there's already a preexisting judgment, right? And so do we look at the underlying merits? Do we look at the underlying facts or is it just we're looking at the elements of a recognition action? What the court did here is just look at the elements of the recognition action. And we submit that that is incorrect given what Sachs and Nelson have already explained, which is you don't look, when you're determining whether commercial activity exception applies, you don't look at the elements of the case, even though Nelson did do that. What they say, what Nelson taught is you look at how is the sovereign acting? Is he acting as sovereign or is he acting as a private party? And in doing that, Sachs explains what Nelson really did is look at the core of the suit and phrases the question as, what did Saudi Arabia do to injure the plaintiff and Nelson? Was it recruiting Nelson to come and work in Saudi Arabia or was it torture? And the torture is a sovereign act. Sachs then criticizes the Ninth Circuit for having applied a one-element test and says, again, that's not what Nelson taught. Nelson says we look at the core of the suit. What did Saudi Arabia do wrong? Here, what did Iraq do wrong? If it is failing to pay a judgment, that is commercial activity. The failure to pay a debt is commercial activity.  Sorry. I'll let you wrap up here. Yes. I think that's a good argument from your briefs. Thank you. Did it have a direct effect in the United States? It most certainly did because Iraq was the one who decided that that debt would be paid with urea and sulfur because the debt was $53 million. It required tons and tons of urea and sulfur, and the only available buyer was in the United States, and that is in the record at Appendix A270. Thank you. Thank you. We'll give you a couple minutes on rebuttal. Thank you. Morning, Your Honors. May it please the Court, Faisal Zubairi, on behalf of the defendants and appellees, Republic of Iraq, and its Ministry of Industry and Minerals, this is a lawsuit seeking the enforcement of a Jordanian judgment that the Jordanian appellate court itself refused to enforce on sovereign immunity grounds. The district court correctly dismissed for both. I'm not really sure of the procedural posture in Jordan because there's something in the plaintiff's brief that says, was a court of cessation or a cessation affirmed the judgment of the lower Jordanian court? The next thing I hear is that the court of appeals for Jordan decided that sovereign immunity barred the enforcement. Can you clear that up for me? I don't understand it. Yes, that is correct, Your Honor. So there was a Jordanian trial court ruling on the breach of contract case. That ruling was appealed up to the court of cassation, which affirmed that there was a breach of contract and issued a judgment. And in neither one of those proceedings was sovereign immunity invoked? That's correct. And the district court notes in its ruling that the reason they found there was no immunity is because the ministry participated in the case, presumably without asserting immunity in that case. However, when they filed a subsequent judgment enforcement action in Jordan, the court of appeal in Jordan held that there was no explicit waiver of sovereign immunity. So appellants were unsuccessful in seeking to enforce the judgment in Jordan before they came to the United States and are seeking to enforce that same judgment here. You're not arguing that there is no judgment to enforce given the Jordanian court of appeals decision. I mean, I wonder why. But, you know, if the judgment is unenforceable or invalid because the sovereign immunity, then where's the judgment that they're trying to enforce? We agree that that ruling should basically be res judicata and collateral estoppel on this judgment enforcement action under principles of comedy. And that's one of our alternative arguments for why there's no explicit waiver here, Your Honor. I wouldn't put it in those terms, though. You know, not comedy and res judicata, but simply there's no judgment to enforce because the Jordanian courts have not held that it's invalid. We would not disagree with that characterization. The district court here. Now I'm more confused. So the court of cassation found a waiver of immunity on commercial activity. That's appendix 10789. It was then a different court. A different court. Later, see the Amman Court of Appeal enforcement decision that said you can't enforce it. Correct. That's what you just said. I thought you just told Judge Randolph that the court of cassation did not affirm the judgment. No, that's that's that's that's incorrect. Like they found a they found a waiver of immunity, but not because there was an explicit waiver of sovereign immunity. But they found a commercial activity. There's a commercial activity between Iraq and Jordan. They may have concluded that, but they also know. Wait, wait, wait. So there is a judgment. There is a judgment on a breach of contract claim. Yes, there is. And there's a judgment of cassation. Is that the highest court in Jordan? I believe so. The highest court in Jordan has said there's a judgment here. And your claims of sovereign immunity are rejected because this is a commercial activity. Whatever their test is for that. Yes. So I think there's, there's two parts in the court of cassation. And I think the district court recounts this in its ruling as well. It's number one, there may have been a commercial activity between Iraq and Jordan, but number two, I think they also mentioned that because the party participated in the litigation, there was no assertion of sovereign immunity at the trial court level. So I think that basically the breach of contract action. The normal acts that are subject to the private law, there's no way to use the jurisdictional immunity considering the nature of the commercial dealing between the plaintiff and the defendant. That's 109. So that decision. From the Amman part was only about enforcement, not about the existence of a valid judgment. That is correct. It's about the enforcement. And this is not an enforcement action. This is a recognition action. Well, it's, it's a, it's a recognition action, but it's seeking to enforce that same judgment. So if, if the district court recognized this judgment, would that lead to automatic enforcement or would they have to file an affidavit or whatever they find assets? Yeah, they would have to see. Okay. So this is not an enforcement proceeding. Okay. I'm just asking. It's not, there has to be a whole nother proceeding. No enforcement would result from a judgment in this case, recognizing this judgment. Correct. Correct. Okay. So the district court in this case. Correctly concluded that there is no subject matter jurisdiction under the foreign sovereign immunities act, either under the commercial activity or the explicit waiver exception appellant, all that conceded that the commercial activity exception couldn't apply when it chose not to object to the magistrate judges, original ruling.  since the district court also correctly ruled that there was no explicit waiver appellant now contends that the third clause of the commercial activity exception should apply to this case. There are however, two insurmountable hurdles to the application of the commercial activity exception, which I'll address quickly before then moving on to the explicit waiver. With respect to the commercial activity exception. Number one, this case is based on a Jordanian judgment for the OBB versus SACS and Nelson versus Saudi Arabia decisions from the Supreme court. The based upon analysis focuses on the government of the complaint by reference to the elements that are required to prove up the plaintiff's claims. This court in Odiombo versus Kenya confirmed that the same interpretation of the based upon analysis applies to the second clause of the commercial activity exception because the same phrase and the same statute should be interpreted the same. And most recently, or even more recent than the Kenya decision in Volambia versus Tanzania, this court affirmed a district court ruling that applied the same interpretation of the based upon language to the third clause of the commercial activity that the appellant is trying to invoke here. And it did so in substantially similar circumstances, concluding that the case was based, that the case seeking the recognition of a foreign judgment under the same DC uniform money judgment or recognition act was based upon a foreign judgment as opposed to any underlying commercial activity. So this is, since this is recognition and not enforcement and it's recognition, I assume under the DC uniform foreign judgment app. And since the recognition proceeding requires looking at the underlying proceeding, I mean, this is just sort of to enter a judgment in this court. That is the equivalent to the judgment that was entered in Jordan and requires looking at the proceeding, some of the nature of the content of what the dispute was about. I don't know that it's enough to say this is based upon that judgment because that judgment itself. One is a reflection of a particular dispute, but more importantly, the recognition action itself requires examination of content and procedures of that prior, how that judgment came into being. So I'm not sure you can say it doesn't look at what the nature of the dispute was, what the character of the dispute was, how the procedures were involved, whether the other court had jurisdiction, whether there was fraud, whether there's a conflict with another judgment. There's just a lot of factors that you have to consider. So it seems to me difficult to divorce it the way you do. I'm not talking about an enforcement action. I'm talking about a recognition action to pretend that that's totally divorced from the underlying proceeding. It's actually really kind of like just a continuation. So in Volambia, the court dealt with a similar judgment recognition action, not an enforcement action, and it concluded that the action was based upon the foreign judgment as opposed to the commercial activity underlying the foreign judgment, and I think that's the distinction. In terms of a judgment recognition action, this court or the district court would have looked at whether the foreign court had jurisdiction, whether the court had due process, whether there's a fully enforceable judgment, but it wouldn't need to look at what was the commercial relationship between the parties or what did the contract require. Specifically, like in this court's own Volambia ruling at page 1143, this court was focused on the judgment itself, concluding that, quote, this case involves no remedy of specific performance or immediate consequence in the U.S. flowing from the Tanzanian judgment, so there is no direct effect here. Much like the judgment in Volambia, the judgment in this case, which is on appendix page 860, does not require any performance or payment in or to the U.S. So I would submit that the judgment recognition action, what's relevant are the elements that are required to prove up the plaintiff's claims, and those elements are whether the court had jurisdiction, whether there was due process, whether there was a foreign judgment, but I don't think that the commercial relationship between the parties is however relevant. Even assuming that it was relevant. What if the defendants, if you guys had in this proceeding and wanted to raise one of the factors recognized by this code set, the Uniform Enforcement of Foreign Judgments Act, what would say you wanted to raise? There's a conflicting decision, there was fraud in the proceeding. What if you wanted to raise that this was really a tax dispute, not a commercial dispute, that you're trying to resolve some tax disputes with them? What would happen then? Sure, we could re-litigate the original judgment. I mean, we could argue that it's not enforceable. Are you saying you can't? This is a standard for recognition under D.C. law of this judgment. Surely, if you thought it was obtained by fraud, if you thought that it was contrary to some agreement, a settlement agreement in the case, if there was insufficient notice, if there were two other proceedings going on that this was in conflict with, you're saying you couldn't raise those defenses? You could raise those defenses, but I don't think they necessarily require an examination of the contractual relationship between the parties, right? They're focused on the… Certainly, there's categorical exceptions for certain types of civil actions. If Iraq's defense was that this wasn't to settle a contract, it was to settle the taxes that they had overpaid to us. What would happen then? I mean, I don't think we're faced with that scenario, nor have I seen case law addressing it, but the case law I have seen from the circuit… Then you'd have to examine the underlying judgment in order to enforce the judgment. You would examine the judgment, but you don't necessarily have to examine the contract that the original judgment was based upon. I mean, so like in the Supreme Court, in OBB v. Sachs, for example, it was a personal injury lawsuit for someone who purchased a train ticket in the U.S. and the Supreme Court said, based upon analysis, we're not going to consider the fact that the train ticket was purchased in the U.S. Rather, what's relevant is that this person was injured while they were traveling abroad, right? Yeah, I think that's very different from the point that I'm raising. Okay. I mean, even if we were required to examine the commercial activity underlying the Jordanian judgment here, what we have here is a contract between a Jordanian plaintiff and an Iraqi government entity for the delivery of chemicals in Jordan. There was no performance or payment required in the U.S. in this case, so there could still be no commercial, there could be no direct effect from any commercial conduct that was underlying the Jordanian judgment. Even if we had to examine what the Jordanian judgment was based upon, we would submit that there's no direct effect of any conduct in Iraq, any commercial conduct in Iraq between the parties that would have an impact in the U.S. In fact, in the Oduambo versus Kenya decision, this court noted that the rule is that by definition, quote, a breaching a contract that establishes the United States as a place of performance will have a direct effect here, whereas breaching a contract that establishes a different or unspecified place of performance can affect the United States only indirectly as a result of some other intervening event. I think appellant's reply brief acknowledges that there was no requirement to ship on part of Iraq. These materials to the U.S. Iraq could not agree to do so because it was subject to U.S. sanctions at the time. The Jordanian judgment itself, the one that they're trying to recognize here, which is at appendix page 849 paragraph four, notes that this was a contract between a Jordanian plaintiff and an Iraqi government entity for the delivery of chemicals in Jordan by exporting them via the Iraqi Jordanian borders, pursuant to the letter of a commitment. I know you want to discuss waiver and you've got less than. Sure. I have some questions about the explicit waiver here. I mean, so Iraq does not dispute the statements that were made in the declaration. Is that correct? Or did not blow or not hear dispute that those statements were made? I don't think we don't dispute that they were made, but we didn't see a need to dispute them in the district court because they're insufficient. And I mean, there are decades old statements. Their description of the words. We were not in a position to dispute or not dispute them because the people who supposedly made them are dead or gone. Right. That's, that's the practical situation. So if you're not disputing them and then, I mean, why shouldn't we look at that declaration and see that looking at the, you know, all of the statements together Iraq had an intent to waive its sovereign immunity. I mean, number one, they're paraphrased oral hearsay statements that seek to recreate conversations that took place 10 years ago. Disputing the disputing. Sorry, go ahead. You're not disputing that if you were disputing the content content, because it's 10 year old here, excuse me. Is 10 year old hearsay. I think we both have the same question here, but if you're taking as given that those are accurate statements as to what was told them, then you need to answer judge Rose question. Even if we assume that they're accurate statements, they're insufficient to clearly unequivocally and unambiguously wave sovereign immunity. In this case, none of them mentioned sovereignty, immunity waiver. None of them even discussed those concepts. It has to be clear and unambiguous that the court has also said that it's not a magic words requirement. Right. And, and, you know, there are statements in the declaration like Iraq would not and could not dispute the lawsuit at all. Iraq and the ministry, you know, would have no defense to any such lawsuit. Our position is that even if those statements were made, they would be statements about the merits of the dispute. None of them say that Iraq is not going to object to the jurisdiction of the court in the United States, even an implicit way. Immunity and defense. Yes, permanent defense. Yes, it's not. Yes. It's a defense. Yep. I mean, it's jurisdictional here, so it's more complicated, but it's. I'm sorry. What if the statements were on behalf of the government of Iraq, I hereby waive sovereign immunity. That would be clear and unequivocal. It would be, but it would be out of court, not sworn. And then the next day, the plaintiff comes in and sues and the council for Iraq and the sovereign immunity. I don't see, I don't see why an oral statement ahead of time would be binding at all. I agree with that. Right. So there's two problems with their waiver argument. Number one, the statements are not a clear and unambiguous waiver of sovereign immunity. Number two, they're not verbatim and they're not contemporaneous. And you said you're not verbatim and contemporaneous are not relevant to you because you're accepting for purposes of this motion that these are. Actual accurate descriptions of the words, if they, if they are, they're insufficient, but what we alternatively also argued that there's no case that allows for an oral waiver of sovereign immunity at all. And there are cases that says there can't be, there isn't a case that says there can't be, but you have an oral contract. No, there's a written contract, a letter. I'm sorry. My question was, can you have oral contracts? Yes. Okay. Can sovereigns have oral contracts? Yes, but there would have to be consideration. Yeah. Yeah. I said, there's a contract. All right. I'm not here to go through all the elements of forming a contract. Let's just, you've agreed that a sovereign could enter into an oral contract. Sometimes in contracts. Sovereign waves immunity, right. In the contract itself. That language is not there in any of the statements. I'm going to finish here. Sure. You just made a very broad statement. That it can never be oral. If you have an oral contract in which the sovereign. Orally with full authority. Says as part of this contract. If a dispute arises, the Republic of rock. Hereby waves it's sovereign immunity from suit. On that contract. And you had all the evidence you need. An oral contract is found. The terms are not disputed as they aren't here. Your position is that you can't have an oral waiver of immunity. So I'll explain why I think you should. Yes or no question. Could that be. Is that your position that that oral waiver of sovereign immunity. Undisputed in content, undisputed in authority. Contemporaneously recorded and verbatim. Again, things you aren't disputing in this case. I don't know why you keep repeating that. I am giving you the facts as I've given them. Would that suffice? I mean, you would have to have the context, which we don't hear. I told you the context. Is your position there could never be an oral? I heard you say never be an oral waiver. There never has been right. There never has been recognized in the case law. That's why we need to decide these things. And then the legislative history of the FSIA, I think, is relevant to that question. So, for example, this court has found that there can only be an implicit waiver in the three circumstances recited by the legislative history. It's not implicit. But that same legislative history also recounts only two examples where you can have an explicit waiver. Number one, treaty. Number two, contract. So that's why we submit that ex post facto oral statements that are neither a treaty or neither a contract should not be sufficient to waive oral immunity. I'm sorry. If they brought the former president of Iraq to the stand and he said, yes, on behalf of Iraq, I orally waive sovereign immunity. If you were on the stand and he said that. It's an oral. It's still oral. It's still oral. But the circumstances would be completely different. This is not, for example. I'm responding to your argument that there can never be an oral waiver of sovereign immunity because we don't have a case yet. We don't know what words were even used here. So that's part of the difficulty. You can't say that. We know what words. They've told us the words and you're not disputing them. So even assuming the truth of their words, our position is that they're insufficient to waive sovereign immunity because none of them talk about sovereign immunity. None of them talk about jurisdiction. They don't use the words we're not going to object or we're not going to object to the jurisdiction of this court. We'll raise no defense.  And that could be. We will raise no defense. And you just agreed. The sovereign immunity is a defense. It would have to be more specific than that. The waiver has to be. Is that if I'm not sure what's I'm not sure what's ambiguous about. We have rights. We're aware of those rights. We hear by knowingly intelligently with authority represent to you that we will not raise any of those defenses. I don't think they're not ambiguous. I don't think those sentences are that clear and ambiguous. And, I mean, there is a case that we cite in our brief, which found an explicit written waiver of sovereign immunity, which explicitly said, we hereby waive sovereign immunity insufficient because the immediately preceding paragraph said that that agreement was going to be governed by Guyanese law. Right. So, the problem here is we're completely devoid of the requisite context. We don't know what what other discussions happened here. That's the I think. Unless you have any questions. Okay, sum up your sentence and then I think we've heard your argument. Sure. Our position is that there isn't a specific and clear unambiguous waiver of sovereign immunity here. In fact, many of the statements recount that the officials didn't state that there was sovereign immunity. Therefore, this court should imply or by implication, find some sort of waiver. We would submit that the evidence and the statements themselves are entirely insufficient. Okay, must come forward with something to show that sovereign immunity was waiving. They haven't been here. Okay, thank you. Thank you. Okay, let's take a Gomez. We will give you 2 minutes. Your honor, there was a direct effect in the United States as a result of Iraq's failure to deliver the area and the sulfur. And we know that because in the record at a 204, the declarant says that the inability to fulfill the New York buyer devastated our company's reputation in the marketplace. Materially compromised our access to the commercial department of the U.S. Embassy in Amman, Jordan, and thwarted our ability to meet financial obligations. They essentially got blacklisted NASA than partners got blacklisted by the commercial department of the U.S. Now, the court, this court and energy fund recognizes that there was a concern over plaintiff's unit laterally creating U.S. jurisdiction. Because the plaintiff just moved to the United States and said, well, I live here now. So this is where I'm supposed to get paid the reward money in that case. That is not a concern in this case, because it was Iraq who decided to pay the debt using tons and tons of sulfur and urea. It was $52 million worth of urea. And at that time, our record also shows, at that time, there was no other buyer in existence other than in the United States. So Iraq was the one who caused the direct effect, who involved the United States in this lawsuit. And we know that this direct effect wasn't trivial because the U.S. Embassy in Amman isn't going to just blacklist a person in the marketplace because they failed to deliver a product that they consider to be trivial. Thank you. Thank you very much, counsel. The case is submitted.
judges: Millett; Rao; Randolph